IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CONOR RYAN BRODERICK,

      Plaintiff,

v.                              CASE NO. 5:17-cv-203-MCR-GRJ

WESLEY COLESON, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff initiated this case by filing a *pro se* complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). ECF No. 1. The Complaint stems from an injury that Plaintiff sustained while he was part of an inmate work crew at FCI-Marianna. Plaintiff claims that Defendants violated his constitutional rights under the Eighth Amendment in connection with his training and supervision during the work. The case is now before the Court on Defendants' motion to dismiss the Complaint or in the alternative for summary judgment, which is supported by various documents and affidavits. ECF Nos. 51, 52. Plaintiff has filed a response in opposition, ECF No. 71, and the motion is therefore ripe for decision. For the following reasons, the undersigned recommends that Defendants' motion for summary judgment be granted.

## I. <u>Plaintiff's Allegations</u>

According to the allegations of the Complaint, Plaintiff was enrolled in the inmate Heating, Ventilation, and Air Conditioning ("HVAC") Training Program at FCI Marianna.  ECF No. 1. Plaintiff states that the work was "physically demanding, required stamina, long-hours, and problem solving." ECF No. 1 at 7.  Plaintiff worked under the supervision of Defendant Coleson, the HVAC foreman and vocational instructor.  *Id.*

On December 23, 2015, Plaintiff and other inmates were assigned to clean the air handling unit (AHU) located on the second floor of the Administration Building at FCI-Marianna as part of a mold remediation project.  ECF No. 1 at 8.  Prior to commencing the project, Plaintiff and the other HVAC inmate crew members participated in a safety meeting.  ECF No. 1 at 10.  At the safety meeting, Plaintiff and the other crew members were presented with a summary of the project, including the types of molds expected to be present, the location of the subject areas, and a description of the personal protection equipment (PPE) to be worn by the inmates. According to Plaintiff, the PPE included a Tyvek body suit, a respirator, goggles, and rubber-and-cloth gloves.  This was the same PPE that Plaintiff had used on an earlier cleaning project.  Plaintiff alleges that the meeting did not address the type of chemicals to be used or chemical handling procedures. *Id.*

Plaintiff's task was to first spray the coils of the air handler with a cleaning agent called "Nu-Brite". Plaintiff alleges that he entered the confined space within the air handler unit (AHU) on his hands and knees, and then had to lie on his left side in order to maneuver the sprayer and spray the coils. Two other inmates stood by in the AHU mechanical room to assist Plaintiff. Coleson was not present when Plaintiff began spraying but arrived about 15 minutes later. At that point, Plaintiff was lying in overspray from the spray wand. Coleson offered Plaintiff direction and suggestions but did not advise Plaintiff to exit the AHU. *Id.* at 8-9.

Shortly after Coleson left, Plaintiff began experiencing tingling, itching, and then pain like a "fire ant bite" along his left side. At that point, Plaintiff exited the AHU and informed Coleson. Plaintiff went to a designated decontamination room and began to remove his PPE. The skin and hair on Plaintiff's left hand and arm were peeling off. When Coleson observed his injury, he made an emergency call to the prison's medical facility. Plaintiff discovered more skin damage as he removed his PPE, including along his shoulder, legs, and thighs. Coleson and Plaintiff went to the prison's Health Services, where Plaintiff was treated for second and third-degree chemical burns. *Id.*

Plaintiff contends that he was not supplied with the safety data sheet (SDS) for Nu-Brite prior to using the substance and that prison officials

supplied him with inadequate PPE. *Id.* at 13. Plaintiff alleges that after the incident he learned that Nu-Brite is identified as a hazardous chemical by OSHA, and that proper handling and mixing of the chemical were not addressed at the safety meeting. Plaintiff alleges that according to the Nu-Brite SDS a rubber PPE body suit must be worn if there is to be direct contact between the chemical and a worker, and that the Tyvek bodysuit was inadequate to protect him from harm. *Id.* at 11. Plaintiff alleges that his injury was the result of an "accident" that "could have been avoided" if prison officials had properly evaluated the risk posed by Nu-Brite and foreseen the likelihood of direct contact with a worker. *Id.* at 12.

Plaintiff concludes that his injuries were caused by the following factors: (1) not being informed by Coleson about the "name and character of the chemical prior to use," (2) not being supplied with the Nu-Brite safety sheet, and (3) being supplied with inadequate PPE. *Id.* at 13. Plaintiff alleges that Defendants' actions violated his Eighth Amendment rights because they knowingly directed Plaintiff to use hazardous chemicals without proper training and practices, which "brought about a hazardous working environment." *Id.* at 14. The named Defendants are Coleson, FCI-Marianna General Foreman Woody Rush, and Safety Compliance Specialist John Ham. For relief, Plaintiff seeks compensatory and punitive damages. *Id.*

## II.  Defendants' Motion

Defendants contend that: (1) Plaintiff fails to allege an Eighth
Amendment violation because his allegations fail to establish the subjective
component of a deliberate-indifference claim; (2) Plaintiff's *Bivens* claims
are barred by the doctrine of qualified immunity; and (3) Plaintiff's *Bivens*
claims are not cognizable under *Ziglar v. Abbasi*, which held that expansion
of the *Bivens* remedy is a disfavored judicial activity.  ECF No. 52.  In
support of the motion, Defendants offer the declarations of Coleson, Rush,
and Ham, as well as supporting documents.  ECF No. 51-1.  Defendants'
evidence may be summarized as follows.

Coleson has been the HVAC foreman at FCI Marianna since 2012,
and he was in charge of the AHU cleaning project.  ECF No. 51-1 at 1.
Plaintiff participated in the safety meeting that preceded the cleaning
project on December 11, 2015.  According to Coleson, at the meeting the
project was summarized, including a discussion of the mold they would
encounter, the cleaning agent to be used, and the PPE the crew members
would wear.  Plaintiff was issued two pairs of gloves: a rubber pair worn
under a second rubber-and-cloth pair.  Plaintiff also received a Tyvek
bodysuit, a respirator, and goggles.  *Id.* at 2.

Plaintiff had been on the HVAC detail since November 2014 and had
received training in HVAC procedures and hazards prior to the December

2015 project.  Additionally, Plaintiff had worked on other projects using Nu-Brite.  Coleson is unaware of any prior injuries using that cleaning agent.  *Id.*  The SDS for Nu-Brite coil cleaner states that skin protection measures are rubber gloves as well as "appropriate chemical resistant clothing.  As required by employer code.  Rubber apron recommended."  ECF No. 51-1 at 12.  Coleson states that "the job did not require a rubber apron and no rubber apron was provided.  Aside from not being required, this rubber apron is not a full body rubber suit and would not have protected [Plaintiff's] back or side under the circumstances."  *Id.*  at 3.

Coleson was supervising the 12-inmate crew from a central common area in the Administration building about 30 feet from the AHU.  Coleson watched the inmates and provided guidance and assistance as necessary.  Coleson states that "[u]nlike the other inmates performing similar tasks, [Plaintiff] decided to lie down in the air handler, which allowed the chemical to collect underneath him and make contact with his body as he sprayed the coils."  When Plaintiff informed Coleson that he was in pain, Coleson "immediately rushed him to Health Services for medical treatment.  [Plaintiff] was decontaminated and assessed by Health Services at that time."  No other inmates were injured.  *Id.*

Coleson states that he was unaware that Plaintiff had decided to lie down to clean the AHU, and Plaintiff was the only crew member to do so.

"Lying down in the [AHU] was not required, either by order or circumstance, to perform the cleaning task.  Other inmates were able to clean the air handler without lying down[.]" *Id.*  Coleson submitted a photograph of himself crouching within the AHU to demonstrate that lying down was unnecessary.  Coleson avers that he did not observe Plaintiff lying down, nor did he compel or instruct Plaintiff to lie down in order to perform the cleaning. *Id.* at 3-4, 19.

Coleson avers that he "was not aware of any substantial or unreasonable risk of serious harm to the health or safety" of Plaintiff or the other crew members.  Coleson further avers that he is personally familiar with the relevant BOP Program Statements, and that the BOP does not prescribe a particular cleaning method for the AHU, leaving the method "to the discretion of the institution."  *Id.* at 4.

Plaintiff signed an "orientation training sheet" which Coleson also signed in November 2015, confirming that Plaintiff and Coleson "reviewed the individual safety talk" for relevant topics such as biological hazards, confined spaces and equipment, PPE, reporting injuries, and respiratory hazards.  *Id.* at 6.  Plaintiff also signed a "hazard communication receipt" confirming that he had received instruction and had reviewed the SDS relevant to the work.  *Id.* at 7-8.

Defendant John Ham is the BOP's Safety Compliance Specialist at FCI-Marianna.  His responsibilities include monitoring the function and availability of safety equipment and work projects at FCI-Marianna.  Ham did not personally issue PPE to Plaintiff or other members of the work crew, nor does the Safety Department typically issue equipment directly to inmates.  The equipment is issued by the work crew supervisor.  Ham's job is to make PPE available, and according to Ham the PPE made available for this job complied with the SDS for Nu-Brite.  Ham avers that he has no knowledge of any prior injuries using the provided PPE with Nu-Brite, nor is he aware of any substantial or unreasonable risk of serious harm associated with the PPE that was issued.  ECF No. 51-2 at 1-2.

Defendant Woody Rush is the General Foreman at FCI-Marianna.  In that capacity, Rush assists the Facilities Manager with oversight of facilities operations and supervision of staff.  Rush is Coleson's supervisor.  Rush participated in the safety meeting prior to the mold remediation project. According to Rush, the meeting summarized the project and included training on the types of molds that were present, the cleaning agent to be used, and a description of the PPE.  Plaintiff took part in the project and had previously used Nu-Brite.  The PPE that was provided to Plaintiff and other inmates complied with the SDS for Nu-Brite.  Rush was not present for the AHU cleaning project on the date of Plaintiff's injury, nor was Rush

aware of any substantial or unreasonable risk of serious harm to Plaintiff or other inmates.  ECF No. 15-3 at 1-2.

In opposition to the motion, Plaintiff argues that Defendants were "well aware" of the hazards posed by the cleaning agent, Nu-Brite, and the inadequacy of the PPE issued to him.  ECF No. 71 at 2.  Plaintiff argues that Coleson did not train him to perform the work in a "crouching" position and alleges that Coleson knew he was lying down in the AHU.  Plaintiff complains that Defendants did not adequately guard against respiratory hazards posed by the work.  Plaintiff opines that the supervision of the work amounted to "major carelessness and irresponsible job management". *Id*. Plaintiff points to the SDS for Nu-Brite as support for his claims, and also submits an unsworn statement purportedly made by inmate Jarrod Sanford. Sanford states that he saw Coleson come to the AHU to inspect the work while Plaintiff was lying on his side.  ECF No. 71 at 9.  Plaintiff also alleges that prison medical staff failed to adequately document his burn injuries and he submits treatment records from the prison's Health Services.  Inasmuch as there is no dispute that Plaintiff was injured and he has not alleged an Eighth Amendment claim regarding his medical care, his medical records are not relevant to the Court's resolution of the motion.

## III.  <u>Standard of Review</u>

Because resolution of the motion depends upon matters outside of the pleadings, the motion is properly treated as one for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.)  As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.)  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11ᵗʰ Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks, 548 U.S. 521, 530 (2006)*.  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact.  *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11ᵗʰ Cir. 2001.)

Prison officials are prohibited from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Farmer v. Brennan,* 511 U.S. 825, 828 (1994). Officials violate the Eighth Amendment when they act with deliberate indifference to a plaintiff's health or safety. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976).

Inmates injured in the course of their work must establish the objective and subjective factors of deliberate indifference. *See Moore v. Faurquire*, 595 F. App'x 968, 970, 974 (11th Cir. 2014). In demonstrating

the objective component, Plaintiff must show that a condition of his confinement was sufficiently serious to violate the Eighth Amendment, because it posed an unreasonable risk of serious damage to his health or safety. *Chandler v. Crosby,* 379 F.3d 1278, 1289 (11th Cir. 2004). Courts must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25, 36 (1993).

For the subjective component, Plaintiff must demonstrate: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant,* 614 F.3d 1288, 1312 (11th Cir. 2010). Defendants must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "also draw the inference." *Farmer,* 511 U.S. at 837. Defendants may however, escape liability for known risks "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In the workplace safety context, "prison officials are deliberately indifferent when they 'knowingly compel convicts to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful.'" *Smalls v Berrios*, Case No. 3:06-cv-

96-LAC-MD (N.D. Fla. 2007), 2007 WL 1827465, at *7 (citing *Ray v. Mabry,* 556 F. 2d 881, 882 (8th Cir.1977); *Morgan v. Morgensen,* 465 F. 3d 1041,1045 (9th Cir. 2006); *Jackson v. Caine,* 864 F. 2d 1235, 1246 (5th Cir.1989); and *Franklin v. Kansas Dep't of Corrections,* 160 F. App'x 730, 736 (10th Cir. 2005)).  "Courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison work details does not constitute deliberate indifference."  *Smalls*, 2007 WL 1827465, at *7.  Rather, such claims sound in negligence.  Conduct sufficient to rise to the level of deliberate indifference occurs "when a prison official knowingly compels a prisoner to perform work that involves an imminent threat of serious physical harm posing a danger to the prisoner's life or health."  *Id.* at *8.

## IV. <u>Discussion</u>

In this case, Plaintiff has not refuted Defendants' summary-judgment evidence that Coleson, Ham, and Rush lacked subjective knowledge of a risk of serious harm to Plaintiff in connection with the AHU cleaning task. Thus, even assuming that the condition of confinement – the cleaning task -- was objectively sufficiently serious to violate the Eighth Amendment, Plaintiff has come forward with no evidence that any Defendant had subjective knowledge of any risk.  The summary-judgment evidence does not show that Defendants subjectively knew that the PPE issued to Plaintiff

would not protect him from an injury if Plaintiff were to lay down in the
accumulated Nu-Brite overspray, or that Defendants knowingly failed to
train Plaintiff not to lie down despite knowing of such risk.  As Defendant
Coleson's affidavit reflects, there is nothing in the SDS for Nu-Brite that
requires PPE different from that issued to Plaintiff and the other inmates.
The SDS recommends "appropriate chemical resistant clothing.  As
required by employer code.  Rubber apron recommended."  ECF No. 51-1
at 12.  It does not, as Plaintiff suggests, require a full-rubber jumpsuit.
Moreover, as Defendant Coleson explains, a rubber *apron* would not have
prevented an injury that was incurred while lying down in the hazardous
substance.  *See* ECF No. 51-1 at 2-3.  The Court cannot conclude on this
record that Defendants should have provided Plaintiff with different PPE or
training.  In any event, "the mere failure to provide proper instructions or
safety devices for use on prison work details" does not constitute deliberate
indifference. *Smalls*, 2007 WL 1827465, at *7.

There is a factual dispute as to whether Coleson saw Plaintiff lying
down in the AHU.  The Court will accept Plaintiff's version of the facts for
purposes of this motion.  Even if Coleson saw Plaintiff lying down, Plaintiff
has come forward with no evidence that Coleson was subjectively aware of
an imminent threat of serious harm by doing so and that Coleson
nevertheless ordered or instructed Plaintiff to continue performing the work

that way, as is required for a showing of deliberate indifference.  *See id*. The summary judgment evidence reflects that Coleson only became subjectively aware of the threat when Plaintiff complained of tingling, itching, and burning.  At that point, there is no dispute that Coleson took immediate action to secure medical attention for Plaintiff and was not deliberately indifferent to his injury.

In the same vein, Plaintiff's allegations fail to establish any subjective knowledge on the part of Ham or Rush, such that any failure in regard to training or the PPE issued to Plaintiff could amount to deliberate indifference.  Plaintiff's claims instead sound in negligence, as is evident in the allegations of the Complaint and his response to Defendants' motion, wherein Plaintiff states that his injury was due to an "*accident* that could have been avoided," or due to "major *carelessness* and *irresponsible* job management."  ECF No. 1 at 12; ECF No. 71 at 2 (emphasis added).  But in order to make a case for deliberate indifference Plaintiff must establish that Defendants' conduct amounts to more than gross negligence.  *See, e.g., Thomas,* 614 F.3d at 1312.  Plaintiff has not done so.  Because Plaintiff has failed to controvert Defendants' evidence that they lacked subjective knowledge of a risk of serious harm and nevertheless disregarded the risk, there is no genuine issue of material fact on this

threshold requirement of a successful deliberate-indifference claim.

Defendants are therefore entitled to judgment as a matter of law.

## V. <u>Recommendation</u>

For the foregoing reasons, it is respectfully **RECOMMENDED** that

Defendants' motion for summary judgment, ECF No. 52, should be

**GRANTED**, and judgment entered in Defendants' favor.

**IN CHAMBERS** this 14th day of March 2019.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal co**